IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 09-23324-CIV-MOORE/SIMONTON

NOAH BREAKSTONE,

Plaintiff,

v.

CATERPILLAR, INC.,

Defendant.
_____/

## ORDER DENYING PLAINTIFF'S MOTION TO CERTIFY CLASS

THIS CAUSE came before the Court upon Plaintiff's Motion to Certify Class (dkt # 31).

UPON CONSIDERATION of the Motion, the Response, the Reply, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

**I.    BACKGROUND**

Plaintiff Noah Breakstone ("Breakstone") is seeking to certify a class action lawsuit on behalf of individuals who purchased marine engines containing allegedly defective parts manufactured by Defendant Caterpillar, Inc. ("Caterpillar").

    A.    Factual Background

        1.    Facts Related to Putative Class

Caterpillar manufactures marine engines used by vessels throughout the United States. 2d Am. Compl. (dkt # 24), ¶ 6. Between April 1999 and July 2004, Caterpillar manufactured and sold "model 3196" engines. 2d Am. Compl. ¶ 7. From February 1993 until October 1997, Caterpillar manufactured and sold "model 3176B" engines. 2d Am. Compl. ¶ 8. From August

1997 until July 2001, Caterpillar manufactured and sold "model 3176C" engines. 2d Am. Compl. ¶ 8. In July 2001, Caterpillar admitted that there were significant design problems in a component called an "aftercooler" with all of these models whereby, in many cases, water was able to enter the engines and cause "severe" damage. 2d Am. Compl. ¶¶ 12-13. From February 2002 until the time the Complaint was filed, Caterpillar manufactured and sold model "C-12" and/or "C12" engines. 2d Am. Compl. ¶ 9. Breakstone contends that the design defect persisted in the C-12 and C12 model engines. 2d Am. Compl. ¶ 12.

Although not made clear by the Complaint, Breakstone's Memorandum related to the present Motion clarifies that the different versions of the engines used a variety of different aftercooler parts. See Plaintiff's Memorandum of Law in Support of Its Motion to Certify Class (dkt # 33), at 3. The timeline of aftercooler parts used in the engines is as follows: engines made from September 1996 to July 1998 used part no. 138-2571; engines made from July 1998 to May 2001 used part no. 161-9898; engines made from July 2001 to October 2001 used part no. 210-5631; and engines made from November 2001 to the present used part no. 216-5147. Id.

        2.      Facts Specific to Named Plaintiff

Breakstone purchased a vessel containing a rebuilt model 3196 marine engine in 2001. 2d Am. Compl. ¶ 14. He experienced problems with the engine after 120-150 hours of usage, and these problems increased over the next 50-70 hours. 2d Am. Compl. ¶ 15. These problems culminated with the vessel breaking down during the summer of 2002. 2d Am. Compl. ¶ 17. An authorized Caterpillar service center concluded that it was necessary to rebuild the 3196 engine a second time. 2d Am. Compl. ¶ 18. Engine problems surfaced again in May or June of 2003. 2d Am. Compl. ¶ 20. This time, Breakstone opted to have the 3196 engine replaced with two C-12

engines at a cost to Breakstone of $40,000. 2d Am. Compl. ¶ 23. Breakstone sold the boat at a loss in 2007. 2d Am. Compl. ¶ 24.

    B.    <u>Procedural Background</u>

        1.    The <u>Jaikins</u> Action

On July 8, 2004, Breakstone's counsel filed a similar class action Complaint in Circuit Court for the County of Macomb, State of Michigan. <u>See</u> Compl. <u>Jaikins v. Caterpillar, Inc.</u>, No. 04-2886 (dkt # 36-13). James W. Jaikins, III was the named plaintiff in that action. <u>Id.</u> Jaikins alleged two counts on behalf of a nationwide class: (1) breach of express warranty and (2) breach of implied warranty of merchantability. <u>Id.</u> Jaikins' case was subsequently removed to Federal Court in the Eastern District of Michigan. <u>See</u> Notice of Removal, <u>Jaikins v. Caterpillar, Inc.</u>, No. 04-73404-CIV-TARNOW (E.D. Mich.) ("<u>Jaikins</u>") (<u>Jaikins</u> dkt # 1). Breakstone sought to intervene in this action. On January 5, 2007, the matter was certified (<u>Jaikins</u> dkt # 127). The <u>Jaikins</u> court certified the following class:

> All persons or entities in the United States who at any time have owned and used a boat powered by Caterpillar marine engines equipped with any version of aftercooler model/part number 138-2571, 161-9898, 210-5631, and 216-5147. Excluded from the Class is any such person who claims personal injuries as a result of incidents related to these aftercoolers.

<u>See</u> Further Order Regarding Class Certification (<u>Jaikins</u> dkt # 156), at 2. The <u>Jaikins</u> court found the following issues could be determined through common proof:

> (1) whether there is/was a defect in material or workmanship related to the subject aftercoolers; (2) whether Caterpillar provided parts or components and labor needed to correct such a defect; (3) whether Caterpillar otherwise met its responsibilities under the express limited warranty as it relates to such a defect; and (4) whether the express limited warranty failed of its essential purposes as it relates to such a defect.

<u>Id.</u>

After discovery concluded in <u>Jaikins</u>, Caterpillar moved to decertify the class.  <u>See</u> Mot. for Decertification & Brief in Support (dkt # 36-15).  This Motion was granted in a ruling from the bench in which the <u>Jaikins</u> court stated:

> The bottom line is that to show an actionable defect, under whatever law, or at least under most laws, there is so much individualized showing that the Phase I would not move the case forward.  It would not eliminate the necessity of each and every member of the class having to come forward and do a separate claim.

Hearing Tr. at 54-55 (dkt # 36-1).  On June 11, 2009, the court denied Jaikins' Motion for Reconsideration, stating "[t]here was no palpable defect in the decertification order.  As this litigation proceeded, it became clear that plaintiff's theory of showing a design defect alone would not demonstrate there was a defect actionable under an express warranty claim in many jurisdictions."  <u>See</u> Order Denying Plaintiff's Motion for Reconsideration (dkt # 34-1).  Jaikins' counsel moved to withdraw and was allowed to do so on July 20, 2009.  <u>See</u> Mots. to Withdraw (<u>Jaikins</u> dkt ## 354-55); Orders (<u>Jaikins</u> dkt ## 364-65).  On August 18, 2009, the case was dismissed with prejudice based on "plaintiff's failure to cooperate in preparing the joint final pretrial order."  <u>See</u> Order Dismissing Complaint (<u>Jaikins</u> dkt # 380).

    2.  The Present Action

On November 2, 2009, Breakstone filed a Complaint (dkt # 1) on behalf of himself and various classes including all persons similarly situated in Florida and 12 other states.  The Complaint alleged: (1) breach of express warranty and (2) breach of implied warranty of merchantability.  On December 9, 2009, Caterpillar filed an Answer (dkt # 7).  On December 22, 2009, Caterpillar filed an Amended Answer (dkt # 16).  On December 30, 2009, Breakstone filed an Amended Complaint (dkt # 17).  On January 12, 2010, Caterpillar filed an Answer to the Amended Complaint (dkt # 22).

4

On February 2, 2010, Breakstone filed a Second Amended Complaint (dkt # 24) on behalf of himself and a class of all persons similarly situated in 13 states, alleging: (1) breach of express warranty; (2) breach of implied warranty of merchantability; and (3) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), §§ 501.201-.213, Florida Statutes. The new third count was only on behalf of Breakstone and all persons similarly situated in Florida. The class Breakstone sought to certify was defined to include:

> All persons, companies, or government entities in the State of Florida who at any time have owned and used a boat powered by Caterpillar marine engines equipped with any version of aftercooler model/part number 138-2571, 161-9898, 210-5631, and 216-5147 (the "Florida Class"). Excluded from the Florida Class is any such person who claims personal injuries as a result of incidents related to these aftercoolers.

2d Am. Compl. ¶ 25(i). Breakstone sought to include similar class definitions in 12 other states. 2d Am. Compl. ¶ 25(ii-xiii).

On February 11, 2010, Caterpillar filed an Answer to the Second Amended Complaint (dkt # 25) which included certain Counterclaims. On February 26, 2010, Breakstone filed a Motion to Dismiss Caterpillar's Counterclaims (dkt # 26). This Motion to Dismiss was granted in a Paperless Order (dkt # 19) dated March 10, 2010. On March 12, 2010, Caterpillar filed an Amended Answer (dkt # 29) to the Second Amended Complaint. On April 12, 2010, Breakstone filed a Motion to Certify Class (dkt # 31), a sealed Motion to File Memorandum of Law Under Seal (dkt # 32), and a sealed Memorandum of Law (dkt # 33). On March 29, 2010, Caterpillar filed a sealed Motion to Seal Its Opposition (dkt # 35) and a Memorandum in Opposition (dkt

# 36). On May 10, 2010, Breakstone filed a late Reply (dkt # 38)[1] and Motion to File Reply Under Seal (dkt # 39).

## II.  APPLICABLE LAW

### A.  Relevant Florida Law

Breakstone has brought three claims: breach of express warranty; (2) breach of implied warranty of merchantability; and (3) violation of FDUTPA. Under Florida law, to prove a breach of warranty, a plaintiff must show "(1) Facts in respect to the sale of the goods; (2) Identification of the types of warranties created, i.e. express warranty Section 672.313 . . . ; (3) Facts in respect to the creation of the particular warranty . . .; (4) Facts in respect to the breach of the warranty; (5) Notice to seller of breach; (6) The injuries sustained by the buyer as a result of the breach of warranty." James v. Ashley Adams Antiques, Inc., No. 2:05-cv-515-FtM-29DNF, 2006 WL 4990908, at *5 (M.D. Fla. June 15, 2006) (quoting Dunham-Bush, Inc. v. Thermo-Air Serv., Inc., 351 So. 2d 351, 353 (Fla. 4th Dist Ct. App. 1977)). The elements a plaintiff must show to prove a breach of implied warranty are: "(1) That the plaintiff was a foreseeable user of the product; (2) That the product was being used in the intended manner at the time of the injury; (3) That the product was defective when transferred from the warrantor; (4) That the defect caused the injury." Amoroso v. Samuel Friedland Family Enters., 604 So. 2d 827, 833 (Fla. 4th Dist. Ct. App. 1992), aff'd, 630 So. 2d 1067 (Fla. 1994). "[A] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or

---

[1] Breakstone failed to request an extension in the time to file its Reply, and thus the Court need not consider its contents. However, the Court references it because its contents do not change the outcome.

6

unfair practice; (2) causation; and (3) actual damages." Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d Dist. Ct. App. 2006).

    B.    Law Governing Certification

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004). Rule 23(a) requires a putative class to meet the requirements of numerosity, commonality, typicality, and adequacy of representation. See Fed. R. Civ. P. 23(a); Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1265 (11th Cir. 2009). Certification pursuant to Rule 23(b)(3) requires two additional findings: "(1) that common questions of law or fact predominate over questions affecting only individual members ('predominance'); and (2) that a class action is superior to other available methods for adjudicating the controversy ('superiority')." See Vega, 564 F.3d at 1265. While a district court must not decide the merits of the case at the class certification stage, it "can and should consider the merits . . . to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." Id. at 1266 (citations omitted).

### III. ANALYSIS

    A.    Injunctive Relief Pursuant to Rule 23(b)(2)

Caterpillar argues that Breakstone lacks standing to make a claim for injunctive relief pursuant to Rule 23(b)(2). A "proposed class representative must have a personal stake in the outcome of the case at the time the district court rules on class certification." Guest v. Jones,

No. CV 202-142., 2006 WL 83116, at *1 (S.D. Ga. Jan. 11, 2006) (citing Tucker v. Phyfer, 819 F.2d 1030, 1033 (11th Cir. 1987)). Here, Breakstone seeks an injunction,

> precluding the sale of any further defective Caterpillar model 3176B, 3176C, 3196, C-12, and C12 marine engines and further requiring that all current owners and past purchasers of the defective Caterpillar model 3176B, 3176C, 3196, C-12, and C12 marine engines be provided with actual notice of the defect.

2d Am. Compl. at 16. However, Breakstone sold his Caterpillar boat in 2007, 2d Am. Compl. ¶ 24, and has no present personal stake in any of the injunctive relief sought. Thus, he cannot bring these claims on behalf of the putative class and his Motion to Certify a claim for injunctive relief pursuant to Rule 23(b)(2) must be denied.

    B.    Damages Pursuant to Rule 23(b)(3)

Caterpillar argues that Breakstone is collaterally estopped from filing a class action claim for damages pursuant to Rule 23(b)(3). The doctrine of collateral estoppel bars "relitigation of particular issues which were actually litigated and decided in a prior suit." Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1501 (11th Cir. 1990). "Under collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." Montana v. United States, 440 U.S. 147, 153 (1979). "[F]or purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig., 333 F.3d 763, 767 (7th Cir. 2003). Here, Breakstone is bound by the prior decision in Jaikins either as an intervening plaintiff or as an unnamed class member. Id. at 768 ("unnamed class members have the status of parties for many purposes and are bound by the decision whether or not the court otherwise would have had

personal jurisdiction over them"). Thus, the only remaining question is whether issues determined in that case preclude the present Motion to Certify. The Jaikins court made a finding that:

> to show an actionable defect, under whatever law, or at least under most laws, there is so much individualized showing that the Phase I would not move the case forward. It would not eliminate the necessity of each and every member of the class having to come forward and do a separate claim.

Hearing Tr. at 54-55 (dkt # 36-1). This finding of fact is fatal to Breakstone's claim because it prevents him from being able to meet the "predominance" requirement under Rule 23(b)(3).[2] Under Rule 23(b)(3) questions in common must "predominate over the individual questions." Klay v. Humana, Inc., 382 F.3d 1241, 1254 (11th Cir. 2004). Similarly, issues requiring generalized proof should predominate over the issues requiring individualized proof. Kerr v. City of W. Palm Beach, 875 F.2d 1546, 1558 (11th Cir. 1989). In essence, the Court must determine "whether there are common liability issues which may be resolved efficiently on a class-wide basis." Drossin v. Nat'l Action Fin. Servs., Inc., 255 F.R.D. 608, 616 (S.D. Fla. 2009) (quoting Brown v. SCI Funeral Servs. of Fla., 212 F.R.D. 602, 606 (S.D. Fla. 2003)). Here, this prong cannot be met because the Jaikins court found that individual issues predominated over common issues. Thus, Breakstone's Motion to Certify pursuant to Rule 23(b)(3) must be denied because it is precluded by the doctrine of collateral estoppel.

Breakstone's untimely Reply argues that preclusion should not occur because Breakstone is currently seeking to certify a statewide class applying Florida law whereas the prior action was

---

[2] Though the ruling only addresses "most laws" without addressing Florida law specifically, Breakstone does not dispute Caterpillar's contention that Florida follows the majority view in this area of the law.

a nationwide case applying the law of multiple districts. Reply at 4-5. This distinction is irrelevant given that here the prior court made a finding that each <u>individual</u> member would have to come forward with a separate claim and that an individualized, as opposed to statewide, showing must be made that predominated over common issues. The problem of a need for individualized inquiry exists whether the class is created on the state or national level.[3] Similarly, Breakstone argues that preclusion should not apply to the portion of his action brought pursuant to FDUTPA because no claim was previously brought under FDUTPA. Reply at 5 n.7. However, the requirement that Breakstone show an actionable defect also exists under FDUTPA. See <u>Kia Motors Am. Corp. v. Butler</u>, 985 So. 2d 1133, 1140 (Fla. 2d Dist. Ct. App. 2008) (noting that FDUTPA, breach of express warranty, and breach of implied warranty claims all require a showing of actionable defect). Thus, Breakstone is also collaterally estopped from bringing the FDUTPA claim.

Even if this Court did not give the <u>Jaikins</u> holding a preclusive effect, it would, at minimum, give significant weight to the decision in the <u>Jaikins</u> case "both for its persuasive power, and because it involves the same facts." <u>Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.</u>, 814 F.2d 358, 367 (7th Cir. 1987) (citation omitted). "Only the gravest reasons should lead [a] court . . . to come to a conclusion that departs from that in the class suit." <u>Id.</u> at 367-68.[4] Breakstone has come forward with no persuasive reason to depart from the

---

[3] Though it is not the subject of the present Motion to Certify, the current Complaint does in fact attempt to seek to represent 12 additional state classes in addition to the Florida class. See 2d Am. Compl. ¶ 25(i)-(xiii).

[4] Although the <u>Premier</u> court was decided in the context of an opt-out suit, its reasoning applies with even greater force in the context of an opt-in plaintiff attempting to bring a subsequent action.

Jaikins holding as the arguments made in Breakstone's brief are largely the same as those considered at length and rejected by the Jaikins court. Therefore, even if collateral estoppel did not apply, this Court would deny the current Motion based on the persuasive authority of Jaikins.

Further, even absent collateral estoppel or the deference suggested by Premier, this Court would still find that denial is appropriate. In cases like the present one, it is inappropriate to certify a class containing both individuals who have "manifested a deficiency" and those whose product has "performed satisfactorily" since the injuries of the putative class members with no manifest injury only have speculative damages. See Kia Motors, 985 So. 2d at 1139; cf. Weaver v. Chrysler Corp., 172 F.R.D. 96, 99 (S.D.N.Y. 1997) ("It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own."). Even where engines did manifest problems, there would be individual issues as to whether the problems were caused by the allegedly defective design and whether remedial steps taken by Caterpillar (such as repairs provided) had fixed the problem. In sum, Breakstone's Motion is precluded by Jaikins' holding and even if it were not, this Court would find Jaikins' holding to be correct. Thus, Breakstone's Motion to Certify pursuant to Rule 23(b)(3) is denied.

## IV.   CONCLUSION

For the foregoing reasons, it is ORDERED AND ADJUDGED that Breakstone's Motion to Certify Class (dkt # 31) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 26th day of May, 2010.

_____
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record